Dear Sheriff Kight:
You have requested our opinion concerning the scope of your authority as Sheriff to serve court orders that direct you to go out-of-state and return a prisoner to Maryland for trial. You indicate that you have received writs of habeas corpus and other miscellaneous court orders that direct you, as Sheriff, to go to Washington, D.C., Northern Virginia, and other nearby jurisdictions to return prisoners to Montgomery County for trial. You also indicate that these orders are not issued pursuant to any statute related to retrieval of a prisoner from another state or the District of Columbia. You question whether these court orders alone are a sufficient legal basis for the exercise of authority outside Maryland. You also request an analysis of a sheriff's liability if (i) the prisoner or one of the deputies were injured in transit or (ii) a third party were injured by the deputy or the prisoner.
Our opinion is as follows:
1. Unless authorized to do so by law, a sheriff generally may not act as a law enforcement officer beyond the county boundaries in which he or she serves. A sheriff may go out-of-state and return a prisoner to Maryland for trial only pursuant to a statute authorizing such extraterritorial exercise of authority. A sheriff does not derive authority to exercise extraterritorial authority of this kind from a court order alone.
2. The liability situation is complicated, because it has so many variations. We can say with confidence that a sheriff would be responsible for the medical care of a prisoner who was injured in transit, regardless of the legal authority under which the sheriff acted, and regardless of where the injury occurred. The cost of treating any injury sustained by the prisoner in transit would be the financial responsibility of the county in which the sheriff serves. We can likewise say with confidence that if a deputy sheriff were injured while transporting a prisoner from another state to Maryland, the deputy would be entitled to compensation under the Workers' Compensation Act.
If a third party were injured by a deputy or the prisoner and filed suit in Maryland, the sheriff and deputy would be immune from suit under the Maryland Tort Claims Act, provided that the sheriff's or deputy sheriff's actions were not malicious, grossly negligent, or outside the scope of employment.
If the injured third party filed suit in another state, Tort Claims Act immunity could not be asserted directly. The sheriff or deputy would enjoy immunity only to the extent that the court, under the law or public policy of the forum state, chose to recognize it. If the injury occurred during a legally unauthorized venture into the other state — that is, pursuant to court order but not statute — we doubt that immunity could be asserted successfully.
Finally, if the lawsuit alleges a violation of 42 U.S.C. § 1983, the sheriff or deputy sheriff may assert qualified or "good faith" immunity if the transport were authorized by statute. If not, no immunity would be available.
 I Grounds for Retrieving Prisoners From Outside Maryland
A. Introduction
At common law, a sheriff, policeman, or constable had no jurisdiction beyond the borders of his or her county, city, or bailiwick. See 60 Opinions of the Attorney General 319, 325 (1975); 70 Am. Jur. 2d Sheriffs, Police and Constables § 57 (1987); 80 C.J.S. Sheriffs and Constables § 36 (1953). See also Street v.Cherba, 662 F.2d 1037, 1039 (4th Cir. 1981) (generally, an arrest warrant issued in one state may not be lawfully executed in another); Stevenson v. State, 287 Md. 504, 509, 413 A.2d 1340
(1980) (authority to make arrest outside geographical territory is limited). See generally David Kauffman, The Law of Arrest inMaryland, 5 Md. L.Rev. 125, 129 (1941). As Attorney General Burch summarized the general rule, "the acts of [a law enforcement] officer outside his county, city, or bailiwick are unofficial and necessarily void unless expressly or impliedly authorized by some statute." 60 Opinions of theAttorney General at 325.
Conversely, a sheriff may act as a law enforcement officer beyond his or her county to the extent authorized by statute.Stevenson, 287 Md. at 510.[1] We discuss below the statutes under which a law enforcement officer may exercise law enforcement authority outside of this State by taking custody of a prisoner.[2] Unless a sheriff is directed to return a prisoner to Maryland pursuant to a statute authorizing a law enforcement officer to go outside of this State to retrieve a prisoner, entry into the asylum state is unauthorized.
A circuit court "has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county. . . ."
§ 1-501 of the Courts and Judicial Proceedings ("CJ") Article, Maryland Code. A court order by itself cannot grant a sheriff extraterritorial authority not otherwise provided by law.
B. Interstate Agreement on Detainees
A sheriff or other law enforcement officer may enter another state and retrieve a prisoner pursuant to the Interstate Agreement on Detainees ("I.A.D."). See Article 27, §§ 616A through 616R of the Maryland Code. The I.A.D., to which Maryland became a signatory in 1965, provides cooperative methods among the member states for the transfer of prisoners incarcerated in a penal or correctional institution in one state to the temporary custody of a second state. See Clipper v. State, 295 Md. 303, 307,455 A.2d 973 (1983); Beachum v. State, 71 Md. App. 39, 43, 523 A.2d 1033
(1987). See generally Donald M. Zupanec, Annotation, Validity,Construction, Application of Interstate Agreement on Detainees, 98 A.L.R.3d 180 (1980).
The two basic goals of the I.A.D. are to encourage the expeditious and orderly disposition of charges and to provide cooperative procedures among member jurisdictions to facilitate such dispositions. State v. Jefferson, 319 Md. 674, 679,574 A.2d 918 (1990). Under the I.A.D., officials of the "receiving state," where the prisoner is to be tried, direct a detainer to prison officials of the "sending state," where the prisoner is incarcerated. The detainer informs the prison official that there are charges pending in another jurisdiction against one of their prisoners, based on an untried indictment, information, or complaint. Clipper, 295 Md. at 305-08;Beachum, 71 Md. App. at 43. The prisoner's "request for final disposition" of the charges pending in the receiving state is a waiver of extradition and allows the prisoner to be brought back for trial. Article 27, § 616D. The I.A.D. expressly provides a procedure for a law enforcement officer of the receiving state to pick up the prisoner in the sending state. Article 27, § 616F(b).
C. Extradition Act
A sheriff or other law enforcement officer may enter another state to receive custody of a person, including a prisoner, if directed by the Governor to do so pursuant to the Uniform Extradition Act. That Act, adopted by Maryland in 1937, is a uniform act passed by certain states unilaterally. Beachum,71 Md. App. at 46. "While the Extradition Act, unlike the I.A.D., provides for the arrest and surrender of persons to the demanding state who are otherwise at large in Maryland, it overlaps with the I.A.D. in that it also provides for temporary custody to the demanding state of persons incarcerated in Maryland."71 Md. App. at 46-47.
The Extradition Act, Article 41, §§ 2-201 through 2-228, outlines the powers of the Governor to cause the arrest and surrender to the custody of a demanding state persons properly charged there who are presently in, but not necessarily incarcerated in, Maryland and to agree with the executive authority of another state for extradition to Maryland of a person being prosecuted or serving a sentence in the other state. Article 41, § 2-205. If the Governor seeks extradition of a person from another state, the Governor may command any agent to go to the other state to receive custody of the person. Article 41, § 2-222. See also 61 Opinions of the Attorney General 772, 775 (1976).
The Extradition Act's purpose is to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. Utt v. State, 293 Md. 271, 285,443 A.2d 682 (1982). The source of authority for extradition is Article IV, § 2 of the United States Constitution and 18 U.S.C. § 3181et seq. While not constituting a grant of power, those provisions expressly recognize the authority existing in the Governor of a state to demand of the executive of another state the extradition of a fugitive from justice. State v. Waggoner,508 S.W.2d 535, 537 (Tenn. 1973).
You indicate that on one occasion you were informed that a prisoner had waived extradition, i.e., consented to return to Maryland. In the event of waiver, Article 41, §§ 2-222 and 226 would authorize a law enforcement officer to enter the demanding state to retrieve the prisoner. See also White v. Hall,15 Md. App. 446, 449, 291 A.2d 694, cert. denied, 266 Md. 744 (1972) (no reason why an agreement to waive extradition, signed by the person claimed by the demanding state at the time of his parole, should not be enforced under the Uniform Extradition Act).
 II Injury to Prisoner — Cost of Care
A. Introduction
Article 87, § 45 provides that the sheriff "shall safely keep all persons committed to his custody by lawful authority until such person is discharged by due course of law." Article 87, § 46 provides that the sheriff "shall provide . . . other articles for the comfort of sick prisoners as the physician attending the prisoners may deem necessary . . . ." These provisions have been interpreted as requiring the sheriff to furnish hospital or other necessary medical care to those persons lawfully in his or her custody who are injured. See Harford County v. University of Md.Med. System Corp., 318 Md. 525, 530, 569 A.2d 649 (1990); 58Opinions of the Attorney General 647, 648 (1973). In HarfordCounty, the Court of Appeals held that, because the sheriff was the designated custodian of persons who were arrested and charged with a crime prior to trial, the county was responsible for the costs of furnishing medical care to an indigent person who was injured while resisting arrest by police officers.318 Md. at 528-29.[3]
B. Custody Pursuant to Statute
A prisoner retrieved from another state pursuant to a statute authorizing extraterritorial authority would be in the lawful custody of the sheriff, and the sheriff is responsible for the prisoner's safety. Thus, any injury sustained by the prisoner in transport would be the financial responsibility of the county in which the sheriff serves. See Harford County, 318 Md. at 530
(although Sheriff is a State employee, the expenses of the sheriff's office are substantially funded by the county which the sheriff serves).
C. Custody Pursuant to Court Order
Where the sheriff or a sheriff's deputy enters the asylum state without statutory authority to transport the prisoner, he or she does so as a private person. See Stevenson, 287 Md. at 510 (a peace officer who makes an arrest while in another jurisdiction does so as a private person unless the law of the place of arrest authorizes the officer to do so); Wright v. State,58 Md. App. 447, 453-54, 473 A.2d 530 (1984) (same). Although the sheriff or deputy sheriff would be acting as a "private person," any injury sustained by the prisoner during a transport pursuant to court order would probably be viewed as occurring within the Sheriff's or deputy's scope of employment. See Sawyer v. Humphries,322 Md. 247, 257, 587 A.2d 467 (1991) (scope of employment includes acts performed by employee in furtherance by of employer's business). In other words, the prisoner would still be a prisoner for purposes of Article 87, § 46 and therefore entitled to medical care, the cost of which would be compensable by the county.[4]
 III Compensation to Injured Deputy
The Workers' Compensation Act (the "Act") provides workers with compensation for loss of earning capacity that results from an employment-related accidental injury. Huffman v. Koppers Co.,94 Md. App. 180, 184, 616 A.2d 451 (1992), aff'd, 330 Md. 296,623 A.2d 1296 (1993). The Act applies to employers of "covered employees."
Under § 9-202(a) of the Labor and Employment ("LE") Article, an individual "is a covered employee while in the service of an employer under an express or implied contract of apprenticeship or hire." A deputy sheriff would be considered a "covered employee" for purposes of the Act. Thus, if a deputy sheriff is authorized by law to transport a prisoner from the asylum state to Maryland and is injured during transport, he or she would be entitled to compensation under the Workers' Compensation Act. See also LE § 9-203(a)(2) (an individual is a "covered employee" while working for the employer outside of this State).
The result would likely be the same if the injury occurred during a transport made pursuant to court order. While the act of retrieving a prisoner in another state without statutory authority would be unofficial and void, an injury sustained by a deputy during this activity may nevertheless "arise out of" and be "in the course of employment." The term "arises out of employment" refers to the cause or origin of the accident. Proctor-Silex v.DeBrick, 253 Md. 477, 480, 252 A.2d 800 (1969); Huffman,94 Md. App. at 185. An injury "arises out of employment" if there is a causal connection between the conditions under which the work is required to be performed and the existing injury. Id. An injury arises "in the course of employment" when it occurs while the employee is conducting the duty that he or she is employed to perform. The term refers to the time, place, and circumstances under which the injury occurs. Proctor-Silex, 253 Md. at 480;Huffman, 94 Md. App. at 185. Thus, the requirements of the Act might be satisfied even if the activity were outside the scope of proper extraterritorial activity.
 IV Injury To Third Party
A. Introduction
A prisoner transport involves risk to bystanders. A third party might be killed or injured by the prisoner in the course of an attempted escape or by the sheriff's deputy in the course of pursuit.[5] If the prisoner sought to escape, the third party might nevertheless sue the sheriff or deputy in tort, alleging (for example) negligent supervision of the prisoner. If the deputy caused the injury, the third party might sue for negligence. This part of the opinion considers liability issues arising from injury to a third party.
B. Custody Pursuant to Statute
Sheriffs and deputy sheriffs are "State personnel" for purposes of the Maryland Tort Claims Act ("MTCA"). SG § 12-101 of the State Government ("SG") Article, Maryland Code. See Rucker,316 Md. at 281-82. Under SG § 12-105, "State personnel shall have the immunity from liability described under § 5-399.2(b) of the Courts and Judicial Proceedings Article." See also 78 Opinions ofthe Attorney General ___ (1993) [Opinion No. 93-004 (January 8, 1993)]. CJ § 5-399.2(b) provides as follows:
 State personnel are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under Title 12, Subtitle 1 of the State Government Article, even if the damages exceed the limits of that waiver.
Thus, if the third party brings a tort action in Maryland, the sheriff or deputy will be immune from suit, provided the act or omission of the sheriff or deputy was not grossly negligent or malicious. See Boyer v. State, 323 Md. 558, 575, 594 A.2d 121
(1991) (alleged negligence of deputy sheriffs and state trooper in commencing and maintaining high-speed chase of suspected drunken driver fell within purview of statute imposing liability on owner of emergency vehicle for negligent operation of vehicle). Seegenerally Annotation, Don F. Vaccaro, Liability of Public Officeror Body for Harm Done by Prisoner Permitted to Escape,
44 A.L.R. 3d 899 (1972).
If the lawsuit is brought in another state, the sheriff or deputy could not assert MTCA immunity directly, even if the prisoner was transported under a valid extradition request, because Maryland law cannot directly govern a suit in another state. However, if the court of the forum state, i.e., the court where the lawsuit is brought, chooses to apply the immunity provisions of the MTCA under conflict of laws or comity principles, the sheriff or deputy would be immune. See DresserIndustries, Inc v. Sandvick, 732 F.2d 783, 737 (10th Cir. 1984) (the court of a forum state may apply the substantive law of another state if that law would not violate a fundamental policy of the forum state); Williams v. State Farm Mutual Auto Ins. Co.,737 F.2d 741 (9th Cir. 1984), cert. denied sub nom. Landers v.State Farm Mutual Auto. Ins. Co., 469 U.S. 1159 (1985) (under conflict of laws, a court in the forum state is free to apply the substantive law of a sister state where it finds that such state has the most significant relationship to the outcome of the issues involved); Columbia Casualty v. Playtex, 584 A.2d 1214, 1218
(Del.Super. 1991) ("comity permits one state to give effect to the laws of a sister state, not out of obligation but out of respect and deference"). See also District of Columbia v. Coleman, ___ A.2d ___, 1995 WL 626388 (D.C. 1995) (District of Columbia court should have applied Maryland law on the question of whether the affirmative defenses of contributory negligence and assumption of the risk were available in a negligence lawsuit against an on-duty District of Columbia police officer who committed a tort while passing through Maryland).
In addition, the sheriff or deputy sheriff may be immune if the forum state recognizes Maryland's common law immunity doctrine. Under Maryland law, a sheriff — a constitutional officer — would enjoy public official immunity for tortious conduct while performing discretionary acts. See James v. PrinceGeorge's County, 288 Md. 315, 323-4, 418 A.2d 1173
(1980).[6] Unlike a sheriff, a deputy sheriff does not hold a position created by the constitution or laws of Maryland. Opinion No. 94-065 (December 22, 1994) (unpublished). See Rucker,316 Md. at 290. However, deputy sheriffs "certainly have attributes of a public office . . . ." Opinion No. 94-065, at 2. Because deputy sheriffs can be called on to exercise police powers as conservators of the peace, they "arguably qualify as public officials" and ought to be afforded equivalent immunity. Rucker,316 Md. at 281 n. 2.
C. Custody Pursuant to Court Order
While the act of retrieving a prisoner from another state pursuant only to a court order but without statutory authority would be unofficial, it may nonetheless be within the "scope of employment" for purposes of immunity. The general test for determining if an employee's tortious acts were within the "scope of employment" is "whether they were in furtherance of the employer's business and were `authorized' by the employer."Sawyer v. Humphries, 322 Md. at 255. Stated differently:
 The simple test is whether they were acts within the scope of employment; not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By "authorized" is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to him by the master, even though in opposition to his express and positive orders.
Id. (internal quotation marks and citations omitted). Transporting a prisoner ordinarily is done by the sheriff or a deputy sheriff in furtherance of the sheriff's business; therefore, the sheriff or deputy sheriff would be immune from liability under the MTCA.
Should the lawsuit be brought in another state, however, the sheriff or deputy would enjoy immunity from suit only if the court in the forum state elects to recognize immunity drawn from Maryland law. Such an election would be much less likely if the sheriff or deputy lacked the legal authority to have entered the forum state for this purpose. From the perspective of the forum state, it is difficult to perceive a public policy reason to recognize immunity under such circumstances. See Boston v.Causey, 242 P.2d 712, 715-16 (Okla. 1952) (Illinois sheriff not immune from suit by family of prisoner who was killed while being transported by sheriff because at time of car accident in Oklahoma, there was no extradition entitling the sheriff to assert immunity as an agent of the State of Illinois).
 V Civil Rights Liability
If the prisoner or an injured third party brings a lawsuit in Maryland or in another state alleging a violation of 42 U.S.C. § 1983, the immunity defense afforded to State employees under the MTCA would not extend to violation of the federally created rights under § 1983. See Pruticka v. Posner, 714 F. Supp. 119, 125 (D. N.J. 1989) (New Jersey Tort Claims Act did not immunize defendant from suit under 42 U.S.C. § 1983).
A public official, however, may assert qualified or "good faith" immunity when a violation of 42 U.S.C. § 1983 is alleged.Harlow v. Fitzgerald, 457 U.S. 800, 815-18 (1982). Under this form of immunity, government officials are not subject to damages liability for the performance of their discretionary functions when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818. Accord Buckley v. Fitzsimmons,113 S. Ct. 2606, 2613 (1993).
If the sheriff or deputy sheriff is transporting the prisoner pursuant to a court order, there likely would be no immunity in a § 1983 lawsuit because the sheriff or deputy sheriff would be acting as a private citizen (albeit under color of law).
 VI Conclusion
Given the troublesome issues of authority and liability discussed in this opinion, we recommend that you and the Administrative Judge discuss how to proceed in the future. While judicial efficiency is highly desirable, a modification of prior practice will be needed. Transporting prisoners from another state without a basis in statute is legally risky.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Kimberly Smith Ward Assistant Attorney General
_________________________ Jack Schwartz Chief Counsel Opinions Advice
[1] This opinion does not address the circumstances in which a sheriff may act within Maryland but beyond his or her county. Numerous State statutes deal with the sheriff's extraterritorial authority within the State. Those statutes are not the subject of this opinion.
[2] We do not here discuss extraterritorial law enforcement authority based on police mutual aid agreements under Article 27, § 602B, the doctrine of "fresh pursuit," or § 9-303 of the Courts 
Judicial Proceedings Article, which deals with retrieving a witness from another state summoned to testify in this State. These situations would rarely if ever involve prisoner transports of the kind discussed in your letter.
[3] A prisoner injured by a sheriff or deputy might also bring a tort action or civil rights action. These potential causes of action are analyzed in Parts IV and V below, under the premise that a third party is injured. The principles would be the same if the plaintiff were the prisoner instead.
[4] However, if the injury inflicted upon the prisoner is malicious, the individual transporting the prisoner and not the county may be financially responsible. See Sawyer v. Humphries,322 Md. at 257 (conduct of the employee that is unprovoked, highly unusual, and quite outrageous has been held to fall outside the scope of employment).
[5] In the event that a prisoner who is in the lawful custody of the sheriff or deputy escapes from custody while being transported, the sheriff or deputy may follow the prisoner in hot pursuit to recapture. See Stevenson v. State, 287 Md. at 509
(officer may pursue suspected felon to make a legally binding arrest in a territorial jurisdiction other than the one in which he has been appointed to act). See also 31A Am.Jur.2d Extradition
§ 147 (1989). If the prisoner is not in the lawful custody of the sheriff or deputy and escapes while being transported, the sheriff or deputy may only act beyond his or her bailiwick to the extent that the law of the place of arrest authorizes such individuals to do so. See, e.g., Commonwealth v. Corley, 491 A.2d 829, 833 (Pa. 1985) (a private citizen may make an arrest where a felony has been committed and the citizen suspects that the person whom he or she arrested has committed the felony); Hall v. Commonwealth,389 S.E.2d 921, 924 (Va.App. 1990) (a private citizen may make an arrest where a felony has actually been committed and he or she has reasonable grounds for believing that the person arrested was the person who committed the felony). See also Stevenson,287 Md. at 513 (private citizen has the right to arrest without a warrant only when there is a felony being committed in his or her presence or when a felony has in fact been committed, whether or not in his or her presence, and the arrester has probable cause to believe that the person he or she arrests committed the felony).
[6] The Court of Appeals has characterized the office of sheriff as "ministerial in nature; a sheriff's function and province is to execute duties prescribed by law." Crosse v. Boardof Elections, 243 Md. 555, 561, 221 A.2d 431 (1966). Nevertheless, this broad characterization does not foreclose a sheriff from performing discretionary acts in the course of these duties.
 *Page 219